510 S.E.2d 611 (1998)
235 Ga. App. 853
In the Interest of A.K.M., a child.
No. A98A1889.
Court of Appeals of Georgia.
December 30, 1998.
Giddens, Davidson & Mitchell, Kenneth Mitchell, Atlanta, for appellant.
Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Assistant Attorney General, John A. Kupris, Athens, for appellee.
ANDREWS, Chief Judge.
The father of A.K.M. appeals from the juvenile court's order terminating his parental rights to his four-year-old son. Because the juvenile court's ruling was supported by clear and convincing evidence, we affirm.
A.K.M. was born in August 1994 and was taken into the custody of the Department of Family & Children Services (DFACS) in December 1995. A.K.M.'s mother, who was unmarried, surrendered her parental rights in January 1997 and identified appellant as the biological father of A.K.M. The mother also stated that appellant had never legitimated the child and never contributed anything toward his support.
On February 7, 1997, DFACS sent the father a letter informing him that the mother had surrendered her rights and he had 30 days in which to file a petition to legitimate A.K.M. The father never filed a petition to legitimate the child.
DFACS then filed a petition to terminate the father's rights on June 23, 1997, and the court scheduled a hearing on the petition for October 13, 1997. The father attended the hearing and requested a continuance pending the results of a paternity test he took on September 23, 1997. The court granted the continuance and set another hearing for November 17, 1997. At the same time, the father was again served with a summons re-setting the hearing until November 17 and stating that he had 30 days in which to file a petition to legitimate the child or his parental rights would be terminated.
*612 The father received the results of the paternity test on November 6, 1997. He went to the hearing on November 17 on the petition to terminate his rights and never told the court he had received the paternity test results or wished more time to legitimate the child. Therefore, the court granted the petition to terminate the father's parental rights. This appeal followed.
The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. In the Interest of L.F., 203 Ga.App. 522, 417 S.E.2d 344 (1992). On appeal, "[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
1. In his first enumeration of error, the father claims the termination petition is a nullity because "the document was never effectively verified." Specifically, the father objects because the verification was signed and notarized on June 3, 1997, by the DFACS caseworker and the petition itself was not signed by counsel for DFACS until the next day, June 4, 1997. Appellant cites no authority for his contention that this renders the termination petition a "nullity," and we find none. Indeed, OCGA § 15-11-25 requires only that the petition be verified and contain certain information. Counsel for DFACS stated in his place to the court that he prepared the petition, that it was reviewed and verified, and then signed by him the next day. Accordingly, the petition complies with the requirements of OCGA § 15-11-25. This enumeration of error is without merit.
2. Next, appellant argues that "the court created a legally contradictory situation in which appellant relied to his detriment." Here, the father appears to be claiming that he thought he had 30 days from the date he received the test results to start legitimation proceedings. He says he went to a meeting of the Foster Care Review Panel on November 5, 1997, and the panel scheduled another meeting for December 3, 1997, pending the results of the paternity test. Therefore, the father claims he was "misled" into believing that the issue regarding his parental rights was "deferred" until December 3.
The father does not explain, however, why, after receiving the results of the paternity test on November 6, 1997, he then went to the hearing on November 17 on the petition to terminate his rights and never informed the court he received the test results or wanted to legitimate the child. At the hearing, the trial court, after hearing testimony from the mother in which she stated she wanted to surrender her parental rights to DFACS, asked the father: "Mr. Hill, do you have anything you want to present today in terms of evidence or a statement or anything?" The father replied: "Well, all I can say is that fromfrom the beginning when I was in court, I said that if I was the father, I would take full responsibility as Ias I always said." The father said nothing further. He never admitted that it was confirmed that he was the father of the child, never expressed any wish to legitimate the child and never asked the court for more time in which to do so.
Pursuant to OCGA § 15-11-83, a biological father who is not the legal father of the child shall be notified of the petition to terminate parental rights and shall be advised that he loses all rights to the child and may not object to the termination of those rights if he does not file a legitimation petition within 30 days of the notice of the petition to terminate parental rights. OCGA § 15-11-83(h). Here, the father was first notified on February 7, 1997, that he had 30 days in which to file a petition to legitimate A.K.M. Nine months later, as of the date of the November 17 hearing, he still had not done so, despite being informed eleven days earlier that the paternity test results showed the child was his. Nor did he inform the court that he received the paternity test results and wished more time in which to file a petition to legitimate. Therefore, there was no error in the court's determination that his rights *613 should be terminated under OCGA § 15-11-83. In the Interest of D.B.G., 226 Ga.App. 29, 30, 485 S.E.2d 575 (1997).
The father later filed a motion for reconsideration of the court's order terminating his parental rights. A review of the transcript of the hearing on that motion shows the father did not explain why he said nothing at the termination hearing about the results of the paternity test and wanting more time to legitimate the child. As discussed above, he merely claimed that he was somehow misled into believing he had more time in which to file the petition. The trial court found this argument insufficient to justify the failure to file a legitimation petition despite being clearly directed to do so, first in the notice mailed to him on February 7, 1997, and again in the notice served on him after the October 13, 1997 hearing. As the trial court pointed out, the baby was born on August 22, 1994, and the father made no effort to legitimate the child or develop a meaningful relationship with the child until December 1, 1997, when he filed the motion for reconsideration. The juvenile court did not err in denying the motion for reconsideration.
Judgment affirmed.
BEASLEY and RUFFIN, JJ., concur.